**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **DEBORAH WILLIAMS** | ) | |
| | ) | |
| Plaintiff, | ) | **Civil Action** |
| v. | ) | |
| | ) | **NO.** |
| **OCHSNER CLINIC FOUNDATION d/b/a** | ) | |
| **OCHSNER HEALTH SYSTEM** | ) | |
| Defendants. | ) | |

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, **Deborah Williams** ("Plaintiff"), through undersigned counsel, brings this action against Defendant, **Ochsner Clinic Foundation d/b/a Ochsner Health System** ("Ochsner" or "Defendant"), for disability discrimination, failure to reasonably accommodate, failure to engage in the interactive process, retaliation, and unlawful termination in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. ("ADA"), interference with and retaliation for exercising rights protected by the Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq. ("FMLA"), and disability discrimination in violation of the Louisiana Employment Discrimination Law, La. R.S. §§ 23:301 et seq. Plaintiff alleges as follows:

## I. PARTIES

1. Plaintiff, Deborah Williams is a resident of Orleans Parish, Louisiana.
2. Plaintiff was employed by Defendant Ochsner for approximately nineteen years, beginning on or about January 5, 2006, until Defendant terminated her employment on or about March 8, 2025.

3. At the time of her termination, Plaintiff held the position of Referral Coordinator and earned approximately $20.85 per hour.
4. Defendant Ochsner Clinic Foundation is a Louisiana nonprofit corporation doing business as Ochsner Health System and is an employer within the meaning of the ADA, FMLA, and Louisiana Employment Discrimination Law.
5. Defendant employed Plaintiff and exercised control over the terms and conditions of her employment, including her work assignments, accommodations, leave, reassignment, and termination.

## II. JURISDICTION AND VENUE

6. This Court has federal-question jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the ADA and FMLA.
7. This Court also has jurisdiction pursuant to 28 U.S.C. § 1343.
8. This Court has supplemental jurisdiction over Plaintiff's claims arising under the Louisiana Employment Discrimination Law pursuant to 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts as Plaintiff's federal claims.
9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District and Defendant conducts substantial business within this District.

## III. CONDITIONS PRECEDENT

10. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), asserting claims arising from Defendant's discrimination, failure to accommodate, retaliation, and termination.
11. The EEOC issued Plaintiff a Notice of Right to Sue dated May 19, 2026.

12. Plaintiff received the Notice of Right to Sue on or about May 22, 2026.
13. This action is filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue.
14. Plaintiff also provided Defendant with written notice of her intent to pursue claims under the Louisiana Employment Discrimination Law and detailed the discrimination and other unlawful conduct at issue. Plaintiff and Defendant thereafter had an opportunity to attempt to resolve the dispute in good faith. More than thirty days have elapsed since that initial notice.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Long Employment With Ochsner

15. Plaintiff devoted approximately nineteen years of service to Ochsner.
16. Plaintiff began working for Ochsner on or about January 5, 2006, as a Laboratory Processor/Accessioner.
17. Through years of employment and satisfactory service, Plaintiff advanced to the position of Referral Coordinator.
18. For approximately eighteen years, Plaintiff worked in Ochsner's laboratory environment and was routinely exposed to laboratory chemicals, reagents, disinfectants, cleaning products, fragrances, and other airborne irritants.
19. Over time, Plaintiff developed progressively worsening respiratory and environmental sensitivities.
20. Plaintiff's condition substantially limited her ability to tolerate chemical fumes, fragrances, perfumes, air fresheners, mildew odors, and similar airborne irritants.

21. On February 7, 2024, Plaintiff was diagnosed with vasomotor rhinitis by Ann Borreson, M.D.

22. Plaintiff's treating physicians documented that exposure to airborne irritants triggered significant symptoms, including severe nasal inflammation, congestion, excessive mucus production, headaches, migraines, breathing discomfort, and other physical symptoms.

23. Plaintiff subsequently continued treatment with Andrew McKernan, M.D., and later transferred her medical care outside the Ochsner system to Dexter Matrana, D.O.

24. Plaintiff's condition constitutes a disability within the meaning of the ADA and Louisiana Employment Discrimination Law because it substantially limits one or more major life activities and/or because Defendant regarded Plaintiff as having such an impairment.

25. Defendant had actual knowledge of Plaintiff's disability and the limitations resulting from it.

**B. Plaintiff Requested Reasonable Accommodation**

26. On or about April 18, 2024, because of the worsening of her disability, Plaintiff commenced approved medical leave.

27. Plaintiff's treating physician recommended that Ochsner evaluate the air quality and environmental conditions in Plaintiff's work environment to determine whether modifications could reduce Plaintiff's exposure to environmental triggers.

28. Rather than meaningfully evaluating the workplace conditions, Defendant required Plaintiff to initiate its formal ADA accommodation process.

29. Plaintiff complied with Defendant's requests and repeatedly provided medical information and documentation supporting her disability and restrictions.

30. Plaintiff consistently communicated that she wanted to continue working and sought reasonable accommodations that would permit her to remain employed.
31. Plaintiff did not abandon her employment, refuse to work, or refuse to participate in Defendant's accommodation process.
32. Defendant ultimately placed Plaintiff in an ADA reassignment to the Tobacco Cessation Clinic, and Plaintiff returned to work on or about July 1, 2024.
33. The reassignment did not effectively eliminate Plaintiff's disability-related environmental triggers.
34. Plaintiff was therefore forced to return to approved medical leave on or about July 4, 2024.
35. Defendant thereafter required Plaintiff to restart or continue the accommodation process.
36. Plaintiff again cooperated fully.
37. Plaintiff's treating physician specifically recommended remote work as an accommodation.
38. Plaintiff repeatedly expressed her willingness and desire to continue working in a position compatible with her disability-related limitations.
39. In October 2024, during the interactive process, Plaintiff identified a suitable position, applied for the position, and was informed by Ochsner's Employee Relations personnel that she was being placed into that position.
40. However, and without explanation, Plaintiff was never effectively placed into that position to begin work.

**C. Ochsner Failed to Provide an Effective Accommodation**

41. Defendant failed to provide Plaintiff with an effective accommodation that would permit her to continue working.
42. Defendant failed to meaningfully evaluate Plaintiff's request for remote work despite evidence that remote work would eliminate or substantially reduce the environmental triggers caused by the workplace.
43. Upon information and belief, Ochsner had positions available during the relevant period that could be performed remotely or could ultimately transition to remote work.
44. Defendant itself has acknowledged that, during its purported search for accommodations, several alternative positions existed that "would ultimately have allowed for remote work."
45. What is more, In September 2024, Employee Relations Consultant Adrien Adams wrote: "I met with legal who advised that leader accommodate by making [Plaintiff’s] training remote. Leader is completely against this and has requested a call with legal."
46. Defendant nevertheless refused to place Plaintiff into an appropriate vacant position and instead relied upon purported in-person orientation or training requirements as a basis for rejecting available positions.
47. Plaintiff alleges that the in-person training requirement was not an insurmountable barrier to accommodation and could have been modified, shortened, conducted remotely, conducted through a hybrid arrangement, or otherwise accommodated.
48. Plaintiff further alleges that Defendant failed to determine whether temporary or modified training arrangements would permit her to assume an otherwise appropriate position.
49. Defendant also proposed the use of a personal air purifier and N95 mask as accommodations.

50. Plaintiff did not refuse to cooperate with Defendant regarding respiratory protection.

51. Plaintiff had already utilized N95 masks and explained that such masks did not adequately address the airborne irritants causing her symptoms.

52. Defendant nevertheless characterized Plaintiff as having refused proposed accommodations.

53. Defendant's characterization was inaccurate.

54. Moreover, an N95 mask did not eliminate the environmental conditions causing Plaintiff's disability-related symptoms and was not an effective substitute for removing Plaintiff from the triggering environment where a remote or otherwise suitable position was available.

55. Defendant also considered whether onboarding and training for the Tobacco Cessation Clinic position could be performed remotely.

56. Plaintiff alleges that Defendant's own communications and actions demonstrate that remote work was feasible or potentially feasible for her position.

57. Plaintiff further alleges that personnel involved in her employment recognized that remote work would eliminate workplace exposure to fragrances and other environmental triggers.

58. Nevertheless, Defendant failed to implement remote work or another effective accommodation.

**D. Ochsner's Vacancy Search and Administrative Termination**

57. After Plaintiff ceased actively working in July 2024, Defendant continued to keep her on leave while purportedly searching for an alternative position.

58. Defendant now contends that it spent approximately seven months searching for positions and extending Plaintiff's leave, during which time Plaintiff was not paid.
59. Defendant also admits that several positions existed that could ultimately have allowed remote work.
60. Plaintiff alleges that Defendant's search was not conducted in good faith because Defendant failed to place her into an available position for which she was qualified and instead repeatedly imposed additional barriers to placement.
61. Plaintiff was qualified by education, experience, skill, and employment history for multiple positions within Ochsner.
62. Plaintiff had approximately nineteen years of experience with Ochsner and had successfully performed substantial employment duties for Defendant.
63. Plaintiff was capable of performing the essential functions of appropriate alternative positions with reasonable accommodation.
64. Plaintiff's disability did not render her incapable of working generally.
65. Rather, Plaintiff's disability prevented her from safely tolerating certain environmental conditions.
66. A remote position, or an appropriate position in an environment free from the triggers identified by Plaintiff's physicians, would have permitted Plaintiff to continue working.
67. Defendant nevertheless failed to place Plaintiff into an appropriate vacant position.
68. Defendant ultimately informed Plaintiff in or around January 2025 that if a suitable position could not be identified within a specified period, administrative termination would likely result.
69. Plaintiff continued to seek an accommodation and continued to desire employment.

70. Defendant nevertheless terminated Plaintiff's employment on or about March 8, 2025.

71. Defendant characterized the separation as an administrative termination.

72. Plaintiff never voluntarily resigned from Ochsner.

73. Plaintiff remained willing to work and continued to seek a reasonable accommodation that would permit her to continue her employment.

74. Following her termination, Plaintiff was informed by the Louisiana Workforce Commission that Ochsner had represented that Plaintiff had voluntarily resigned and failed to return to work.

75. Plaintiff unequivocally denies that she resigned.

76. Defendant's representation that Plaintiff voluntarily resigned was false and inconsistent with the parties' communications concerning Plaintiff's medical leave and ongoing accommodation process.

77. Defendant's termination of Plaintiff occurred after Plaintiff repeatedly requested reasonable accommodation and while Defendant's purported search for an appropriate accommodation remained ongoing.

78. Defendant's decision to terminate Plaintiff instead of placing her into an available position, modifying training requirements, permitting remote work, or otherwise implementing an effective accommodation was discriminatory and unlawful.

**E. Defendant's Conduct Was Not a Good-Faith Interactive Process**

79. Plaintiff incorporates the preceding paragraphs.

80. Defendant had actual knowledge of Plaintiff's disability and the limitations resulting from it.

81. Plaintiff repeatedly requested reasonable accommodation.

82. Plaintiff provided Defendant with medical information supporting her restrictions.

83. Defendant acknowledged Plaintiff's limitations and attempted at least one reassignment because of those limitations.

84. Defendant therefore understood that Plaintiff could continue working if an effective accommodation were provided.

85. Defendant's purported interactive process nevertheless failed to result in an effective accommodation.

86. Defendant repeatedly required Plaintiff to restart or continue the accommodation process rather than implementing an effective solution.

87. Defendant failed to meaningfully evaluate remote work.

88. Defendant failed to place Plaintiff into an available position that could accommodate her limitations.

89. Defendant relied upon purported training requirements without adequately determining whether those requirements could themselves be modified as an accommodation.

90. Defendant characterized Plaintiff as refusing accommodations despite Plaintiff's continued cooperation.

91. Defendant ultimately terminated Plaintiff while the accommodation process remained unresolved.

92. Defendant's conduct demonstrates that it engaged in an interactive process in form but not in good faith or with the genuine objective of identifying and implementing an effective accommodation.

**COUNT I**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT — FAILURE TO REASONABLY ACCOMMODATE**
**2 U.S.C. § 12112**

93. Plaintiff incorporates paragraphs 1 through 92.

94. The ADA prohibits an employer from discriminating against a qualified individual on the basis of disability and requires reasonable accommodation of known disability-related limitations absent undue hardship.

95. Plaintiff was a qualified individual with a disability within the meaning of the ADA.

96. Defendant knew of Plaintiff's disability and her resulting limitations.

97. Plaintiff requested reasonable accommodation.

98. Reasonable accommodations were available, including but not limited to remote work, modified or remote training, reassignment to a vacant position, modification of the work environment, and other accommodations.

99. Defendant failed to provide an effective reasonable accommodation.

100. Defendant failed to reassign Plaintiff to an available vacant position for which she was qualified.

101. Defendant failed to meaningfully evaluate or implement remote work despite the existence of positions capable of being performed remotely.

102. Defendant failed to modify training and onboarding requirements in a manner that would permit Plaintiff to perform an otherwise appropriate position.

103. Defendant instead terminated Plaintiff after failing to identify or implement an effective accommodation.

104. Defendant's failure to accommodate Plaintiff violated the ADA.

105. Once Defendant became aware of Plaintiff's disability and accommodation requests, Defendant was required to participate in a good-faith interactive process to

determine whether a reasonable accommodation would enable Plaintiff to continue working.

106. Plaintiff participated in that process in good faith.

107. Plaintiff provided requested medical documentation and information.

108. Plaintiff discussed potential accommodations and positions with Defendant.

109. Plaintiff remained willing to work.

110. Defendant, however, failed to meaningfully pursue available accommodations and vacant positions.

111. Defendant repeatedly imposed barriers to Plaintiff's placement, including purported training requirements, while failing to determine whether those requirements could themselves be reasonably modified.

112. Defendant failed to meaningfully evaluate remote work even though remote-capable positions existed.

113. Defendant ultimately terminated Plaintiff rather than completing the process and implementing a reasonable accommodation.

114. Defendant's failure to engage in the interactive process in good faith contributed directly to its failure to reasonably accommodate Plaintiff and to her unlawful termination.

## COUNT II
## VIOLATION OF THE ADA — DISABILITY DISCRIMINATION AND UNLAWFUL TERMINATION
## 42 U.S.C. § 12112(a)

116. Plaintiff incorporates paragraphs 1 through 115.

117. Plaintiff was a qualified individual with a disability.

118. Defendant knew of Plaintiff's disability.

119. Plaintiff suffered adverse employment actions, including failure to accommodate, failure to reassign, adverse treatment during the accommodation process, and termination of employment.

120. Plaintiff's disability and requests for accommodation were motivating factors in Defendant's actions.

121. Defendant terminated Plaintiff after she repeatedly requested accommodations and while Defendant's accommodation process remained unresolved.

122. Defendant's stated justification that no reasonable accommodation or suitable position existed is false, pretextual, and/or based upon Defendant's failure to fulfill its obligation to identify and implement a reasonable accommodation.

123. Defendant's actions violated the ADA.

**COUNT III**
**VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT — INTERFERENCE**
**29 U.S.C. §§ 2615(a)(1), 2617**

124. Plaintiff incorporates paragraphs 1 through 123.

125. Plaintiff was an eligible employee within the meaning of the FMLA.

126. Defendant was an employer covered by the FMLA.

127. Plaintiff suffered from a serious health condition within the meaning of the FMLA.

128. Plaintiff provided Defendant with notice of the need for medical leave and accommodation.

129. Defendant approved and/or designated Plaintiff's leave as protected medical leave under applicable leave policies and the FMLA.

130. Plaintiff was entitled to take protected FMLA leave and to receive the rights and benefits provided by the FMLA.

138. Defendant interfered with Plaintiff's exercise of FMLA rights by terminating her employment in connection with her leave and/or failing to restore her to employment as required by law.

139. To the extent Defendant contends that Plaintiff's FMLA entitlement had expired, Plaintiff alleges that Defendant was nevertheless required to consider additional leave and/or other reasonable accommodation under the ADA.

140. Defendant's conduct caused Plaintiff economic losses, loss of employment benefits, emotional distress, and other damages recoverable under the FMLA.

**COUNT IV**
**VIOLATION OF THE LOUISIANA EMPLOYMENT DISCRIMINATION LAW**
**La. R.S. § 23:323**

141. Plaintiff incorporates paragraphs 1 through 140.

142. The Louisiana Employment Discrimination Law prohibits an employer from discriminating against an otherwise qualified person with a disability and specifically prohibits an employer from failing or refusing to reasonably accommodate an otherwise qualified person with a disability.

143. Plaintiff was an otherwise qualified person with a disability within the meaning of Louisiana law.

144. Defendant knew of Plaintiff's disability and limitations.

145. Plaintiff requested reasonable accommodations.

146. Defendant failed and refused to provide reasonable accommodation.

147. Defendant failed to meaningfully evaluate remote work and failed to reassign Plaintiff to an appropriate vacant position for which she was qualified.

148. Defendant instead terminated Plaintiff because of circumstances arising from her disability and her need for accommodation.

149. Defendant's actions violated La. R.S. § 23:323.

150. Plaintiff has satisfied the notice requirements applicable to her Louisiana Employment Discrimination Law claims.

## V. DAMAGES

151. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer substantial damages.

152. Plaintiff seeks recovery of all damages permitted by applicable law, including:

a. lost wages and salary;

b. lost employment benefits;

c. lost retirement and other employment-related benefits;

d. lost future earnings and earning capacity;

e. compensatory damages for emotional distress, mental anguish, humiliation, inconvenience, and loss of enjoyment of life;

f. damages arising from depletion of personal savings caused by Defendant's conduct;

g. front pay and/or reinstatement;

h. restoration of seniority and employment benefits;

i. liquidated damages to the extent authorized by the FMLA;

j. punitive damages to the extent authorized by the ADA;

k. attorneys' fees;

l. litigation expenses and costs; and

m. all other damages and equitable relief authorized by federal and Louisiana law.

153. Plaintiff has made reasonable efforts to mitigate her damages.

154. Plaintiff's damages continue to accrue.

## VI. EQUITABLE RELIEF

155. Plaintiff seeks equitable relief requiring Defendant, as appropriate, to:

a. reinstate Plaintiff to her former position or a substantially equivalent position;

b. restore Plaintiff's seniority and employment benefits;

c. remove the unlawful termination from Plaintiff's personnel records;

d. correct inaccurate records concerning the circumstances of Plaintiff's separation;

e. correct inaccurate information previously provided to the Louisiana Workforce Commission concerning Plaintiff's separation;

f. provide reasonable accommodation consistent with Plaintiff's medical restrictions; and

g. provide such other equitable relief as the Court determines appropriate.

## VII. ATTORNEYS' FEES AND COSTS

156. Plaintiff is entitled to recover reasonable attorneys' fees and litigation costs pursuant to the ADA, FMLA, Louisiana Employment Discrimination Law, and other applicable law.

## VIII. PRESERVATION OF EVIDENCE

157. Plaintiff previously placed Defendant on notice of its obligation to preserve documents and electronically stored information relating to Plaintiff's employment, disability, accommodation requests, leave, reassignment, termination, available positions, remote work, training, and communications with the EEOC and Louisiana Workforce Commission.

158.Plaintiff expressly incorporates that preservation demand into this action.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Deborah Williams, respectfully prays that this Court enter judgment in her favor and against Defendant, Ochsner Clinic Foundation d/b/a Ochsner Health System, and:

A. Declare that Defendant violated the ADA, FMLA, and Louisiana Employment Discrimination Law;

B. Award Plaintiff back pay and lost benefits;

C. Award Plaintiff front pay or, where appropriate, reinstatement;

D. Order Defendant to reinstate Plaintiff to her former position or a substantially equivalent position with restoration of seniority, benefits, and other employment rights;

E. Order Defendant to provide reasonable accommodation consistent with Plaintiff's disability-related limitations;

F. Award Plaintiff compensatory damages for emotional distress, mental anguish, humiliation, inconvenience, and other non-economic injuries to the fullest extent permitted by law;

G. Award liquidated damages pursuant to the FMLA;

H. Award punitive damages pursuant to the ADA to the extent authorized by law;

I. Award Plaintiff damages for lost retirement contributions, benefits, and other employment-related compensation;

J. Order Defendant to correct inaccurate employment records concerning Plaintiff's separation;

K. Order Defendant to correct any inaccurate representation to the Louisiana Workforce Commission that Plaintiff voluntarily resigned;

L. Award Plaintiff reasonable attorneys' fees and litigation expenses;

M. Award Plaintiff all taxable costs of this action;

N. Award prejudgment and post-judgment interest as permitted by law; and

O. Grant such other and further relief as the Court deems just, proper, and equitable.

**X. JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ *Jonathan Rhodes*___________
Jonathan Rhodes La. Bar #32649
The Rhodes Law Firm, LLC
1937 Peniston Street
New Orleans, LA 70115
T: 504-475-0975 F: 504-475-1013
E: jonathan@therhodeslawfirm.com
*Counsel for Plaintiff*